Whitaker, Judge,
delivered the opinion of the court:
The plaintiff sues to recover liquidated damages assessed against it for failure to complete on time the contract for the building of certain houses in Puerto Rico for the Puerto Rico Reconstruction Administration, and also to recover damages which it claims it suffered by reason of delays in the construction caused by the defendant.
The contract was completed 137 days after the original completion date. The plaintiff was granted an extension of time of 71 days. It was assessed liquidated damages at $200 a day for the remainder of 66 days, a total of $13,200. The principal controversy is over the delay alleged to have been caused the plaintiff by the failure of the administrator to approve certain closet bends which the plaintiff claims were “similar or equal to” the closet bend specified.
*222 The plaintiff admits that under paragraph 16 of article 8 the decision of the administrator on whether or not these .closet bends were “similar or equal to” those specified is final and conclusive, if made in. good . faith; but plaintiff says that his rejection of them was arbitrary and unreasonable and, therefore, under numerous decisions of this court and of the Supreme Court, we have jurisdiction to review his .action. This, of .course, is true. The question presented, therefore, is whether or not the action of the administrator in rejecting the closet bends which plaintiff proposed to install was arbitrary or unreasonable.
The other question presented is whether or not an extension of time should have been granted for delay due' to bad weather, which the administrator held the plaintiff should have foreseen.
The specifications called for the following closet bends:
All cast iron closet bends shall be four (4) inches in diameter, similar or equal to type “C Josam,” as manufactured by the Josam Mfg. Co., Michigan City, Indiana, U. S. A., Catalog G, page 59.
Plaintiff furnished a closet bend manufactured by the Hedges-Walsh-Weidner Company of Chattanooga, Tennessee. The Hedges-Walsh-Weidner Company in their cata-logue advertised two types of closet bends. One of them had a slip-over flange and the other a screw flange. The one plaintiff .proposed to furnish was the slip-over flange, and the question is whether or not the decision of the administrator in holding that this closet bend was not similar or.equal to the type “D Josam” closet bend was arbitrary or unreasonable.
The two bends are not similar. The Josam bend has the screw flange; the Hedges-Walsh-Weidner bend which plaintiff- proposed, to furnish had the slip-over flange. This is a material difference, as will be seen. Also, the exposed end of the Josam type bend was sealed to permit testing of the bend and also to prevent debris from collecting in the pipe after installation; the Hedges-Walsh-Weidner type was not so equipped. Quite evidently the two bends were not similar; so the question to be considered is whether or not the Hedges-Walsh-Weidner bend was equal to the Josam bend. The administrator ruled that it was not.
*223 ' A commissioner of this court has found that the two bends will function equally as well provided they have been properly installed and no obstructions have entered the bends, but he has held that it was more difficult to properly install the Hedges-Walsh-Weidner bends and that it was easier for obstructions to enter them than to enter the Josam bends. He has also found that the Josam bend will probably function properly for a longer time than the Hedges-Walsh-Weidner slip-over type. He has concluded, accordingly, that this type of Hedges-Walsh-Weidner bend and its associated flange were not “similar or equal to” the Josam type “D” bend and its associated flange, and that, therefore, the rejection of the one offered was not arbitrary nor unreasonable. We agree with the commissioner.
A closet bend may be described as the part of the sewer line into which the contents of the closet first discharges. It is a piece of iron pipe bent at a 90-degree angle. One end connects immediately with the sewer line and the other end sticks up through the floor, to which the closet fixture is attached. Over the top of the upright part of the closet bend a flange is either slipped on or screwed on until this flange is in proper position with respect to the floor. That part of the vertical end of the closet bend which projects higher than the proper position for the flange is cut off. A gasket is then placed along the inner edge of the flange and the toilet fixture is forced down against it so as to make a watertight and airtight connection between the toilet fixture and the closet bend.
In order to permanently affix the slip-over flange at its proper location, oakum is first forced between the flange and the toilet bend, after which hot lead is poured on top of the oakum and the two tamped down so as to hold the flange permanently in its proper place. In the Josam type the flange is screwed down on the bend until it is in the proper location, and then by means of a bolt inserted in a hole in the flange it is anchored to the floor, to prevent it from turning.
The commissioner has found that it is more difficult to secure the proper adjustment of the slip-over type flange than of the screw type and that, therefore, good results more often will be obtained by the use of the screw-type flange *224 •than of the slip-over type. We agree that this is so. ' -It appears reasonable to suppose that it would be more difficult to secure the proper adjustment of the slip over type, since it was necessary to maintain it in its proper place while forcing oakum and lead between it and the bend. If great care were exercised, no doubt as good an adjustment could be secured of the slip-over type as could be secured by the screw type; but the defendant in drawing the specifications specified the screw-type flange rather than the slip-over type, presumably because it desired to eliminate the possibility that the requisite care would not be exercised in maintaining the proper adjustment in case the slip-over type were used; it specified a toilet bend with a flange which could be properly adjusted without the exercise of as great a degree of care as was required in the case of the slip-over type. The defendant was entitled to have what it had specified. The bend specified called for the screw.-type flange, and not the slip-over type.
Moreover, the commissioner has found that the connection between the flange and the toilet bend was more readily loosened when the slip-over type was used than in the case of the screw-type flange. In the case of a screw-type flange, it would seem that its adjustment could not be altered unless the threads broke, and thip appears quite unlikely. On the other hand, since the slip-over type flange is ¿fictionally affixed to the bend by oakum and lead, it may be that its connection would be easier to loosen than the screw type.
Furthermore, the TIedges-Walsh-Weidner type did not come equipped with the sealed end with whicji the Josam type was equipped. This we regard as a material difference; but we will discuss this feature of the Josam bend later. At any rate, we cannot say that the action of the administrator in rejecting the slip-over type bend was arbitrary or unreasonable. If it was not, then his decision is final and conclusive.
When these toilet bends were rejected, plaintiff proposed an alternative plan of plumbing which would eliminate closet bends, but this plan was rejected by the administration inspector, Mr. Egozcue, Chief of the Slum Clearance Section. *225 •From his action in rejecting the closet bends which plaintiff proposed to furnish and in rejecting plaintiff’s plan to eliminate the closet bends altogether, plaintiff appealed to the administrator on March 8, 1987. It was acted upon by the administrator on April 21, 1987, by approving the action of the Chief of the Slum Clearance Section.
On the following day the plaintiff proffered the original bend, with this exception: it had caused .the vertical end of the bend to be threaded and had provided a screw-type flange. This was rejected by the administration inspector, Mr. Egozcue, first on April 24, 1937, again on May 5, 1937, and still again on May' 12, 1937. On May 18, 1937 the plaintiff appealed to the administrator, and on May 27 the administrator ruled that the proffered bend was not similar or equal to the one specified. A commissioner of this court has found that this action was not arbitrary nor unreasonable.
The proffered bend was identical with the Josam type bend, with two exceptions: (1) the flange did not have a hole for the insertion of a bolt, by means of which the flange could be affixed to the floor to prevent its turning; and (2) the bend did not have the vertical end sealed.
An unanchored flange would be free to turn away from the closet, thus resulting in the loosening of the connection between the fixture and the closet bend. It, therefore, was necessary to prevent the flange from turning. The Josam bend was superior to the one proffered by the plaintiff on April- 22, in that the Josam bend made provision for preventing it from turning.
As stated, the vertical end of the Josam bend was sealed. The purpose of this was twofold: (1) to permit testing of the bend for possible leaks; and (2) to prevent debris from getting down into the bend prior to the installation of the fixture. A number of days elapsed between the installation of the bend and of the fixture.
When a bend was used which did not come equipped with a sealed vertical end, a rubber stopper was inserted in the vertical end of the bend in order to test it for leaks. The proof shows that this was equally as satisfactory as the bend which came equipped with the sealed end.
*226 In order to prevent tlie accumulation of debris in the bends which did not come equipped with the sealed end, it was customary to insert in the open end of the bend burlap or other material. The proof, however, shows that this material was easily removable and occasionally was removed for one purpose or another, in which event, of course, debris such as concrete, shavings, etc., could' accumulate in the bend, and sometimes might go so far down into the bend that it could not be discovered by inspection. The Josam type came sealed and remained sealed until the toilet fixture was installed. Since it was impossible for debris to collect in the Josam type bend,-and since it was possible for it to collect in the other type, it must be said that the Josam type in this respect was somewhat superior to the type proffered.
It would have been very easy to have remedied the possibility of the turning of the flange proffered by plaintiff by the drilling of holes in the flange for the insertion of a bolt to fasten it to the floor, and the inspector might well have suggested this change to the contractor, and a liberal policy might well have induced him to accept the proffered flange, although it did not have the sealed end; but we cannot say that his action in rejecting the proffered bend as not similar or equal to the one specified was arbitrary or unreasonable. The commissioner did not think it was, and we agree with him.
After the administrator on May 27, 1937 had rejected this bend, plaintiff asked for and was granted a further conference on the matter, following which the administrator ordered the chief engineering inspector to make a further investigation of the matter. Not having heard anything further from the administrator, the plaintiff on June 22, 1937 asked for a copy of the report of the chief engineering inspector. This was furnished to it on June 24, again rejecting the bend as not similar or equal to the one specified. On the following day plaintiff proposed to install a closet bend manufactured by the Blake Specialty Company. (The administration inspector on May 12 had suggested that the closet bend originally proffered by plaintiff would be satisfactory if it were used in combination with the Blake *227 closet connections.) However, the Chief of the Slum Clearance Section on July 3, 1937 rejected the Blake Specialty Company closet bend because, he said, “two cast-iron lugs intended for holding the test cap project too far and prevent the closet outlet horn from fitting the bend satisfactorily.” Plaintiff again appealed to the administrator, who ordered a further investigation. On July 8 the administrator, adopting the suggestion of the chief engineering inspector, permitted plaintiff to use the closet bend which it originally proposed to use, providing only that it would substitute for the cast-iron flange a cast-brass flange. This flange was of the slip-over type, and not of the screw type. The plaintiff assented, and this type of toilet bend was installed.
As mentioned above, the administrator delayed from March 8, 1937 to April 21, 1937 in passing upon the closet bend which plaintiff originally proposed to furnish. He has found that this delay was unreasonable, that he should have acted upon plaintiff’s appeal within ten days and, therefore, he ruled that plaintiff was entitled to an extension of time within which to complete its contract of 35 days on account of this delay. The plaintiff claims that it is entitled to damages suffered on account of this 35 days’ delay, and also claims that it is entitled to damages for the additional delay of 66 days, during which time this controversy was pending, and is also entitled to recover the liquidated damages deducted for these 66 days. We agree with plaintiff that it is entitled to recover the damages it suffered during this 35 days of delay, but we cannot agree that it is entitled to damages for the additional 66 days or to recover liquidated damages deducted therefor.
We cannot say that the action of the Chief of the Slum Clearance Section and of the administrator is free' from criticism; but, on the other hand, we cannot say that their action in the matter was beyond the authority conferred upon them by the contract. This being true, the defendant was not responsible "for this 66 days’ delay and, therefore, the plaintiff is not entitled to recover on account thereof.
The delay was caused, in the first instance, by the plaintiff’s failure to furnish a sample of the closet bends which it pro *228 posed to install, as it was required to do by article 75 of the Technical Specifications. This article provided:
The contractor shall submit the name of the brand or maker of all plumbing materials and fixtures, together with samples of each dor approval of the Chief, Slum Clearance Division, before any of the said materials or fixtures are delivered on the site of the job.
Plaintiff did not comply with these specifications, but ordered and had delivered to the job the closet bends before they had been approved by anyone. Had plaintiff submitted a sample of these proposed bends for approval, nearly all of the delay could have been obviated.
Plaintiff could have obtained the exact bend mentioned.
It did not do so because it had been erroneously advised that these bends could not be obtained; but this certainly was not the fault of the defendant. Had plaintiff exercised due care, it could have obtained the exact bend mentioned and there would have been no delay. Moreover, there could have been obtained from the Hedges-Walsh-Weidner Company a bend, in some respects, at least, similar to the Josam-type bend. This company manufactured not only the bend with the slip-over type flange, but also the screw-type flange; but, instead of securing a bend as nearly similar to the type specified as possible, it ordered the type having the slip-over flange, and it failed to secure approval of this type of bend prior to having them delivered on the job. Having thus put itself in error, the plaintiff exerted every effort to secure approval of the bends delivered in order to save itself from loss; but, as we have held, the defendant was within its rights in refusing to approve them. The fact -that it later approved substantially the same bend as that first submitted to the plaintiff is not .evidence of the fact that this bend was “similar or equal to” the bend specified, but shows only that the administrator and his representatives finally yielded to the exigencies of the occasion and approved something that they really did not want.
The long delay is chargeable principally to the plaintiff. The only delay for which the defendant is properly charged is the unreasonable delay in acting upon plaintiff’s protest.
*229 Tbe administrator bas found tbat he unreasonably delayed 35 days. This we think is fair and just. For the damages accruing during this period we think the plaintiff is entitled to recover.
The commissioner has found that during this period the plaintiff poured concrete at an excess cost of $9,152.49, and that the rental value of its equipment was $28.50 per day, or a total of $997.50. He has found that its pay-roll cost of labor supervision during this period was $402, and that Workmen’s Compensation and insurance items and plaintiff’s overhead totalled $1,786.69. We agree with the findings of the commissioner and, accordingly, we find that the plaintiff is entitled to recover of the defendant the total sum of $12,338.68. For this amount judgment will be rendered.
Plaintiff says that its letter of March 1, 1937 requesting an extension of time should be treated as a letter of protest against the rejection of the bends proffered and that the period of the delay should be computed from this date. We do not think so. It was not a request for a review and reversal of the rejection, but a request for an extension of time. For aught that appears from this letter the plaintiff did not mean to protest the rejection.
Moreover, two days later the plaintiff offered an alternative proposal, thus indicating that it acquiesced in the rejection.
The administrator was not called upon to pass on the rejection until receipt of plaintiff’s letter of March 8, 1937 protesting against it.
Plaintiff’s other claim is for liquidated damages deducted for a delay of two days due to bad weather. Plaintiff was delayed 34 days due to bad weather conditions. The administrator has held that 32 days of the 34 were unforeseeable. The plaintiff claims it was entitled to an extension of time for the full 34 days. It seems to us the administrator was quite liberal in holding that 32 out of 34 days of bad weather were unforeseeable. The contract does not list bad weather among the unforeseeable causes and, therefore, the case of Albina Marine Iron Works v. United States, 79 C. Cls. 714, is not in point. To be entitled to an extension on account of bad weather, the bad weather must have been in fact unforesee *230 able. Any prudent man would bave anticipated that he would have been delayed at least two days by bad weather, if not more.
Plaintiff is not entitled to recover on this item.
Since defendant did not require plaintiff to úse the quick-setting cement, and it was used on its own initiative, it is not entitled to recover therefor.
On the whole case, plaintiff is entitled to recover' of the defendant the sum of $12,338.68, for which judgment will be rendered. It is so ordered.
MaddeN, Judge; JoNES, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.