Whitaker, Judge,
delivered the opinion of the court:
On December 1,1933, plaintiff entered into a contract with the defendant for the construction of 18 four-family apartments at Fort Sill, Oklahoma. It sues to recover on five items of work it was required to do which it alleges were not called for by the contract. Its first claim is for additional back-filling in the amount of $195.24; the second, for additional cost of constructing fireplaces $393.00; third, for the cost of placing mortar between tiles, $4,298.13; fourth, for the cost of louvers, $40.52; and fifth, for the cost of grinding and rubbing concrete surfaces, $3,174.15.
To all of these-claims the defendant first interposes the defense that the decision of the contracting officer on these items was adverse to plaintiff and that plaintiff took no appeal to the head of the department.
Instead of issuing change orders covering the various items uf work not called for by the original contract before the work was done, the Constructing Quartermaster directed *429 plaintiff to do the work first and to submit a claim for it upon its completion. Accordingly, plaintiff on July 7, 1934 submitted a claim for 18 items of extra work. The Constructing Quartermaster prepared a propo'sed change order covering these various items and forwarded it to the Quartermaster General for approval. Most of the items were approved, and a change order apparently was issued covering them. The items on which this suit is based were disapproved and, hence, no change order was issued with respect to them.
No appeal was taken from this action of the Quartermaster General, who was the contracting officer. However, paragraph 3 of the letter from the Quartermaster General to the Constructing Quartermaster, quoted in the letter of the Constructing Quartermaster to the plaintiff dated October 22, 1934, reads as follows:
Regarding such items included in your draft of the proposed change order as have been disallowed by this office, the contractor is at liberty, if he so desires, to file a claim therefor after the completion of the contract.
Upon receipt of this letter plaintiff wrote the Constructing Quartermaster on October 25,1934, requesting reconsideration of the items disapproved, its letter concluding:
We do not desire to present a claim against the Government after the completion of our contract, and we feel that after the facts [we] have recited are realized by the Office of' the Quartermaster General, that our request for a change order to cover the above items will be approved. We have faith in your fairness and judgment.
As we expect to complete and turn over to the Constructing Quartermaster the last of the 18 four-family apartments by October 31, 1934, we request immediate action on the reconsideration of these items, in order that when our contract is completed, they [sic] will be no delay in our final payment.
No answer was made to this letter; the matter lay dormant until after the completion of the entire work. The action taken as outlined in the Constructing Quartermaster’s letter of October 22, 1934, therefore, was not final and no appeal was necessary at the time.
*430 After the work had been completed the plaintiff executed a release excepting therefrom the claims in suit. Thereafter it wrote the Quartermaster General a series of letters with reference to them. In reply thereto the Quartermaster General wrote the plaintiff on February 16, 1935, stating that he would prepare an administrative report to be submitted to the Comptroller General with the claims, and that plaintiff might file any additional documentary evidence it desired. The Quartermaster General, however, said:
As this office is without authority to render any decisions on the claims and can only present the facts for consideration by The Comptroller General, it is considered advisable that your firm submit all of the facts in writing rather than verbally, * * *
but it was stated that an interview would be granted if desired. The interview was granted and plaintiff presented additional evidence and argument to a committee appointed by the Quartermaster General to consider the claims. The plaintiff, however, was never advised of the decision of the Quartermaster General, although it requested advice thereon under date of April 17,1935, saying that unless it was advised of his decision it “would have nothing from which to take our appeal, and, therefore, [we] request that prior to forwarding the matter to the General Accounting Office that you render a decision on the matter and advise us so that if not satisfied we may take an appeal therefrom.” In reply thereto on April 20,1935 the Quartermaster General wrote plaintiff in part as follows:
You are apparently not aware of the procedure to be followed in forwarding claims to the General Accounting Office, which is under the jurisdiction of The Comptroller General of the United States for final settlement. The function of this office and of other Governmental Departments in forwarding claims to the General Accounting Office is to assemble all pertinent data and make a definite determination of fact. Any recommendation this office may make in transmitting these claims is confidential and the law prohibits the divulging of the nature thereof.
After your claim has been passed upon by the General Accounting Office it will advise you what disposition has been made thereof and will definitely outline the reasons for allowing or disallowing the various items *431 your If you are of the opinion that the findings of the General Accounting Office are based upon an erroneous statement of fact or additional evidence has arisen which might cause it to reverse its decision, you are at liberty to present your case to that office for reconsideration.
The Quartermaster General had an entirely erroneous conception of his duties under the contract. The contract called for decisions by him, and not by the Comptroller General, and the plaintiff, of course, was entitled to be advised of his decision. Since the Quartermaster General misconceived his function, he did not follow the provisions of the contract, and his failure to do so made it impossible for the plaintiff to avail itself of its contractual right to appeal to the head of the department. It follows, therefore, that its failure to appeal is no bar to its prosecution of its case in this court. We proceed, therefore, to consider the merits of the several items of plaintiff’s claim.

Claim for additional backfilling

The contracting officer disallowed this claim in his letter of October 22, 1934, on the ground that the unit price of $1.00 per cubic yard for earth excavation included backfill-ing. Apparently this is true. Plaintiff’s president admitted on cross-examination that in figuring on the original contract his estimate for excavation included the cost of back-filling. It would appear, therefore, that when the plaintiff bid $1.00 a cubic yard for additional earth excavation it meant that to include the cost of backfilling.
Defendant’s inspector had directed plaintiff to move all surplus earth to a place about 200 yards away, except so much of it as was needed for backfilling. The plaintiff did not leave sufficient earth near the foundation walls to do all the backfilling required and had to bring back some that had been removed. This was its own fault and it is not entitled to compensation therefor. Just what part of the $795.24 claimed for this item is the cost of moving the dirt back, and what part is the cost of depositing it against the basement walls and tamping it down, is not shown.
Plaintiff has not established a case entitling it to recover on this item.

*432
Claim for additional cost of constructing fireplaces

The contract drawings for the fireplaces show a row of bricks laid one on top of the other on the sides of the fireplace and a row of bricks on the top placed at an acute angle to the bricks on the side. The specifications call for common brick; they say, “Face brick for fireplaces shall be selected from common red brick.”
Plaintiff so constructed two of the fireplaces, but Edmunds, the inspector on the job, told plaintiff that the contract drawings required the top of the fireplaces to be constructed of specially manufactured moulded brick, and he ordered the two fireplaces torn down and rebuilt with these specially moulded brick. There was no warrant for this action in either the drawings or specifications. Plaintiff built the two fireplaces just as it was required to build them.
To have secured the specially moulded brick insisted upon by Edmunds would have been more expensive, and plaintiff suggested in lieu thereof that it be allowed to build the fireplaces in accordance with a design submitted by it, providing for a brick and a half at the top of the fireplace instead of one brick as shown on the original drawings. This was permitted and the rest of the fireplaces were constructed in accordance therewith. The excess cost thereof was $393.00.
There was no warrant for Edmunds’ insistence that the fireplaces be constructed in a way different from that specified, but plaintiff proceeded to do so without protest. Its representatives did not take the matter up with the contracting officer, nor even with the Constructing Quartermaster. It cannot recover when it accedes to the demand of a subordinate without protest and without giving defendant’s authorized representatives a chance to pass on the matter.
The specifications provide that “No charge for any extra work or material will be allowed unless the same has been ordered in writing by the C. Q. M. and the price stated in such order.” No claim for an extra was presented to the Constructing Quartermaster. This provision in the specifications was included to save the defendant from any extra expense except such as was authorized by the Constructing Quartermaster. This was not authorized by him, and there can be no recovery for it.

*433
Claim for additional work and material in flacing mortar between tiles

The contract drawings showed a typical wall section with a 12-inch tile wall. In constructing it the plaintiff proposed to use 8-inch and 4-inch tile, instead of 12-inch tile. Defendant’s inspector Edmunds approved this, but with the understanding that it would be necessary for plaintiff to fill in the joints between the tile with mortar.
Plaintiff had completed the wall on the first story of one of the buildings without filling in the vertical joints between the tile, leaving an open space of approximately one-half inch in width between the pieces of tile. The defendant’s inspector required it to tear it down and to construct the wall by filling up the space between the tile with mortar. Plaintiff constructed the walls of 11 houses in this way, but later, when defendant’s Constructing Quartermaster, Major Doten, was succeeded by Captain George, and the latter had issued a bulletin eliminating the necessity for filling the space between the tiles with mortar, plaintiff made claim for what it said was the extra cost of filling the spaces between the tile in the walls of the 11 buildings already constructed.
The specifications apparently contemplated that all joints should be filled with mortar. Paragraph 41 with respect to laying tile provided in part:
* * * Fill all the joints and crevices between the tile and other work with mortar well slushed in.
When this paragraph of the specifications was drawn it was evidently contemplated that 12-inch tile would be used in building the walls, producing a solid wall. If 4-inch and 8-inch tile were used the wall would not be solid unless the spaces were filled with mortar. The defendant wanted all spaces filled with mortar. There would seem to be no reason why the defendant should have wanted the spaces between the tile and other work filled with mortar and not the joints between two pieces of tile. At any rate, it does not appear that this requirement was an unreasonable one. Plaintiff evidently did not so regard it until Captain George had changed the requirement eliminating the necessity for this.
Plaintiff is not entitled to recover on this item.

*434
Claim for lowers

Defendant asked plaintiff to submit a bid for the construction of certain vaults requiring louvers. This plaintiff did, but its bid was rejected. Before rejection, however, defendant instructed plaintiff to go ahead and purchase the louvers, since they would be needed at once if this work was to be done, but with the understanding that if its proposal was not accepted the defendant would pay for them. When plaintiff’s bid was rejected it turned the louvers over to the Constructing Quartermaster upon the inspector’s instructions and obtained a receipt for them. The defendant refuses to pay for them because it says this was an “extra not ordered in writing.” The defendant, however, got the louvers, it is keeping them, and should pay for them. Insofar as defendant’s technical objection is concerned, we think defendant’s receipt for the louvers in writing is a sufficient compliance with the requirement that extras be ordered in writing.
The plaintiff is entitled to recover $40.52 on this item.

Alleged excess cost of grinding and rubbing concrete swrfaces

The specifications with reference to finishing concrete originally read as follows:
(1) Smooth Finish will be required for all exposed surfaces of concrete on exterior of building. Concrete shall be rubbed with carborundum bricks to a uniform smooth finish.
(2) Bough Finish. — All exposed surfaces of concrete or interior of building not otherwise specified, shall have all fins removed and rough edges dressed off.
This provision was amended before the contract was signed by requiring a smooth finish on both the exterior and interior of the building. The provision for a rough finish was eliminated. Defendant’s agents required no more of plaintiff than was required by the specifications as amended. Indeed, the plaintiff bases its claim on the specifications before amendment. Plaintiff clearly is not entitled to recover on this claim.
Plaintiff is entitled to recover of the defendant the sum of $40.52. Judgment for this amount will be rendered. It is so ordered.
MaddeN, Judge; Littleton, Judge; and Whaxey, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.