Whitaker, Judge,
delivered the opinion of the court:
The plaintiff entered into a contract with the defendant on October 11,1935, for the repairing of jetties at the harbor at Newburyport Harbor, Massachusetts. It sues to recover damages for two alleged misrepresentations by the defendant as to the conditions under which the work was to be performed, and for additional costs incurred by it due to changed subsurface conditions, as alleged, and, lastly, to recover liquidated damages deducted.
The alleged misrepresentations are contained in paragraph 7 of the specifications relating to physical data. This paragraph reads:
The mean range of tide is 7.9 feet. The work is exposed to severe easterly storms. There are no bridges or other obstructions between the proposed work and the sea. The tidal currents have an average velocity of 2.1 miles per hour, which miglit have some effect on contract operations.
*68 It is alleged that there was a sand bar in front of the jetties at the entrance to the harbor which formed an obstruction contrary to the representations made in the above quoted paragraph. It is also alleged that the tidal currents had an average velocity of from 3l/z to 4 knots an hour, contrary to the above representation.
It is not denied that there was a sand bar in front of the jetties at the entrance to the harbor. However, plaintiff was put on notice of its existence by paragraph 1 of the specifications describing the location where the work was to be done.The last sentence of this paragraph reads: “The locality is shown on U. S. Coast & Geodetic Survey charts Nos. 331 and 1206.” These charts clearly show the sand bar and show the depth of the water over it. This depth varied from 7 to 11 feet. Paragraph 1 of the instructions to bidders warned them that they must make their own estimates of the “difficulties attending the execution of the proposed contract, including local conditions, uncertainty of weather, and all other contingencies.” Plaintiff, therefore, was required to determine whether or not this bar would be an obstruction to navigation.
It is not contended that the chart misrepresented the condition at the time the contract was entered into.
Plaintiff also says that a map attached to the invitation for bids shows a channel in the harbor which extends beyond the jetties and that it indicates that the depth in this channel is 18 feet. This is true, but this map does not show the bar in front of the entrance to the harbor, nor does it purport to show the complete situation. It was correct as far as it went. It did not show the bar in front of the harbor, but plaintiff was expressly referred to a document which did show it.
Under these circumstances, it cannot be said that the defendant misrepresented the conditions at the site.
Furthermore, it is apparent that plaintiff itself did not consider that defendant had misrepresented the conditions at the site, because no complaint of the existence of this bar was made until September 14, 1937, about 18 months after the work had been in progress. This complaint was *69 made after plaintiff had gotten far behind with its work and after the contracting officer had made complaint about the slow progress being made. If it had thought there had been a misrepresentation of conditions, complaint thereof would have been made long before. It was made merely as an excuse for its tardiness in performing the work and in an effort to relieve itself from the assessment of liquidated damages for its delay.
Plaintiff’s claim for an adjustment due to changed conditions also relates to this sand bar, so we shall discuss this claim now before taking up its other claim of misrepresentation of the conditions at the site. , ■
Plaintiff says that a flood in the Merrimack River in the Spring of 1936 greatly decreased the depth over.this bar. The Office of the United States Engineer at Boston, Massachusetts, made a survey of the bar and the entrance channel in July 1936, after the flood. This survey showed that there was an available depth of 11 feet at mean low water through the entrance channel, and that the shallowest depth on the range line was 9.6 feet. It is true that the depth at some places over the bar was only 4 feet, as plaintiff says, but so long as there was a channel with a minimum depth of 9.5 feet, the former condition of a .minimum depth of 10 feet, as alleged by plaintiff, had not materially changed. Since there was no change in subsurface condi* tions, plaintiff was not entitled to an equitable adjustment under article 4 of the contract.
Furthermore, this claim of a changed condition was plainly an afterthought, designed to excuse plaintiff for its delay and to relieve it from the assessment of liquidated damages; it was not made until about 18 months after the flood which was alleged to have brought about the changed conditions.
Plaintiff is not entitled to recover damages for misrepresentations as to the existence of this sand bar, nor is it entitled to an equitable adjustment on account of changed conditions in the sand bar.
Plaintiff’s other claim of misrepresentation is with respect to the velocity of the average tidal current. The commis *70 sioner lias found there was no misrepresentation, and we agree. Plaintiff undertook to prove the velocity of the tidal current by the testimony of the masters of tug boats, who estimated its velocity by watching the shore as their boats stemmed the tide. On the contrary, the defendant in November 1936 made a scientific survey to ascertain the velocity, using transits, floats, etc. This survey was conducted by a crew of 11 men over a period of three days and over the full tidal cycle. It showed an average velocity of 2.08 miles per hour. It is much more reliable than the estimates of the velocity of the current made by the masters of those boats. Plaintiff’s proof fails to show any misrepresentation in this respect.
Plaintiff’s final claim is for the recovery of $5,675.00 deducted as liquidated damages for 227 days’ delay at $25.00 a day.
Under plaintiff’s contract it was obligated to proceed within 20 days after receipt of notice to proceed and to complete the contract within 365 days after receipt of this notice, January and February excluded. This notice was received on November 7,1935, which made the date for completion March 5, 1937. However, prior to November 27, 1935. the date plaintiff was required to begin work, and on November 15, 1935, the contracting officer suspended the work on account of bad weather to and including March 31, 1936. The contract was completed on December 22, 1937, 292 days after the original expiration date of March 5, 1937. The contracting officer assessed liquidated damages for the entire 292 days, but the Comptroller General held that the plaintiff was entitled to a credit for 65 days between November 27, 1935, the date the contract required plaintiff to proceed with the work, and April 1, 1936, the date to which commencement of the work was postponed. Accordingly, he authorized the payment to plaintiff of the additional sum of $1,625.00. This was correct.
Plaintiff requested on a number of different occasions extensions of time due to unusually severe weather. These requests for extensions were taken under consideration by the contracting officer who promised to act thereon as soon as *71 the necessary data could be collected, but no action was taken until after final payment was made. This final payment was accepted by the plaintiff under protest and with the reservation of all of its claims. After final payment the contracting officer notified plaintiff that he had no authority to make any further payment and that the whole matter would have to be referred to the Comptroller General. Finally, however, on December 29, 1938, a little over a year after the contract had been completed, the contracting officer wrote plaintiff denying all its claims, including the one for the remission of liquidated damages. Within thirty days thereafter plaintiff took an appeal to the Secretary of War, but the Assistant Secretary of War on February 2, 1939, wrote plaintiff that further payments could not be made through departmental action, but that the matter had to be referred to the General Accounting Office for direct settlement. Accordingly, he did not act on the appeal.
As we have many times held, the contract placed upon the contracting officer and the Secretary of War the duty of making decisions, and their failure to do so is a breach of contract, which authorizes plaintiff to bring suit in this court to recover the amount to which it is entitled under the contract. The most recent case on this point is James McHugh Sons, Inc. v. United States, 99 C. Cls. 414, decided May 3, 1943.
However, from a review of the findings of the contracting officer, we are satisfied that he acted correctly in denying plaintiff’s request for extensions of time on account of unusually severe weather. His findings of fact, which plaintiff introduced in evidence as its exhibit No. 85, sets out a comparison of weather conditions in each of the years 1897,1899, 1904, 1905, 1907, 1908, 1911, 1912, 1913, 1914, 1917, and the years 1936 and 1937. The number of days suitable for work in each of the months for each of the years set out in the table in which work was being done on these jetties were obtained from Government inspectors on the jobs. This table shows that from March to December over all the years mentioned above there was an average of 120 days suitable for work. From March to December 1937 there were 107 *72 days suitable for work, and from April to December 1936 there were 132 days suitable for work. In both. 1936 and 1937 tbe average number of days suitable for work was the same as the average number of days suitable for work over all the years listed in the table. It would appear, therefore, that in the years 1936 and 1937 the plaintiff encountered no weather which was not reasonably to be foreseen.
In the specifications plaintiff’s attention was called to the fact that “the work is exposed to severe easterly storms,” and it was required in bidding on the job to take into account the uncertainty of the weather. The weather not having been more severe than that ordinarily encountered, plaintiff was not entitled to an extension of time on this account. See United, States v. Brooks-Callaway, 318 U. S. 120, and Caribbean Engineering Co. v. United States, 97 C. Cls. 195, 229.
One further thing ought to be said: The contracting officer, in agreeing tó a suspension of work from October 5, 1936, to March 1, 1937, stated if his investigation disclosed that weather conditions were so abnormal and unusual during the period “as compared with what should normally be expected in this season of the year, the matter of extension of contract time will receive our full consideration.” While, in his findings of fact he made no reference to this particular period in denying an extension on account of unusually severe weather, the table referred to above shows that from October to December 1936 there were 41 days suitable for work, whereas the average number of suitable days in these months in the years listed in the table was only 37. Had the contracting officer given further consideration to this particular period, he would have been justified in denying the extension.
The plaintiff is not entitled to recover, and its petition will be dismissed. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.