NIVAN MEHAN *vs.* NATHANIEL L. THOMPSON and a ship's frame.

York.    Opinion December 11, 1880.

*Shipping.    Lien on vessels for materials.    Contracts, — construction of.    Waiver of lien.    Negotiable paper — the effect of its acceptance on a debt.    Payment.*

In order to sustain a lien for material under R. S., c. 91, § 7, the only requirement is that it shall be furnished for a vessel to be built in this State, and that such was the contract.    The lien attaches to the material thus furnished though it has never become a part of the vessel.

Though the law imposes the lien for material furnished to build a ship, it can do so only when it appears that the contract was made with reference to the law.

In order to ascertain whether a given contract was made with reference to any particular law, the fundamental principle is, to ascertain whether the contract was made at a place within the jurisdiction of that law, though the place of performance is one of the facts which affects, more or less, and sometimes decisively, the proper interpretation.

The giving of credit for materials furnished for a ship is not a waiver of the lien.    Though if the time of credit was so extended that it would probably go beyond the time for enforcing the lien, that fact might be evidence tending to show a waiver.

The acceptance of negotiable paper for a debt, and giving a receipt in discharge thereof, are an extinguishment of the original liability, unless the parties did not so intend.    Whenever it appears that the creditor had other and better security than such negotiable paper, for the payment of his debt, it will not be presumed that he intended to abandon such security and rely upon such paper.

Where by the terms of a contract, payment under it was to commence at a certain time named; *Held*, that the amount was to be paid on demand, after the time named.

ON REPORT, the law court to render such judgment as the law and evidence require.

The facts appear in the opinion.

*A. P. Gould*, for the plaintiff, cited : *Ward* v. *Shaw*, 7 Wend. 404; *Houdlette* v. *Tallman*, 14 Maine, 400; Benjamin on Sales, § § 319–325, 703, 140; *Morrison* v. *Dingley*, 63 Maine, 553; 2 Pars. Contr. 95, and authorities cited; R. S., c. 91, § 7; *Page et al.* v. *Hubbard et al.* Sprague's Decisions, 335; *McCabe* v. *McRea*, 58 Maine, 95; *Melledge* v. *Boston Iron Co.* 5 Cush. 158; *Kidder* v. *Knox*, 48 Maine, 551; *Dey* v. *Anderson*, 39 N. J. Law, 199; *Fuller* v. *Nickerson*, 69 Maine,

236; *Deering* v. *Lord*, 45 Maine, 293; *Taggard* v. *Buckmore*, 42 Maine, 77; *The Brig Nestor*, 1 Sumner, 73; *The John Walls, Jr.*, 1 Sprague, 178; *The Ship Antartic*, 1 Sprague, 206.

*R. P. Tapley*, for Ocean National Bank, attaching creditors, who were allowed to come in and defend.

If the plaintiff has any claim to the property in controversy, it owes its existence purely and solely to the statute, c. 91, § 7, R. S. This statutory lien takes effect immediately on furnishing the material. There is no interregnum between the furnishing the material and the subsistence of the lien. The statute has no force beyond the jurisdiction of the power making it. The lien is an incident of a contract and cannot vest without it. *Fuller* v. *Nickerson*, 69 Maine, 236.

By the contract between Mahan and Thompson, the delivery of the timber was to be in Virginia, and there it was delivered. This then was a contract to be executed in Virginia. By the *terms of the contract* nothing was to be done at any other place. The terms of the written contract cannot be varied by parol evidence, nor changed by usage.

The counsel for plaintiff contends that it is immaterial where the contract was made if it was for materials for the building of a vessel *in this State*, and is not limited to instances where they are furnished or delivered to the builder in this State. If there is any force in this assumption, it will be noticed that there is no evidence in this case that the materials were furnished for the building of a vessel *in this State*.

By the contract the sale was upon credit. The delivery was in April, and the payment was to commence in November. The defendant could have taken the timber to any port in or out of the United States, outside of this State, and given a good title to it. The extended credit was a waiver of the lien, if there had been any. Counsel cited: Benj. on Sales, § 796; *Tyler* v. *Currier*, 13 Gray, 134; Story Contr. § 654; 2 Pars. Contr. § 5; Story Prom. Notes, § 165, note to § 161; 13 Mass. 23; *Andrews* v. *Pond*, 13 Pet. 65; *Dyer* v. *Hunt*, 5 N. H. 401; 2 Met. 397–8; *Scudder* v. *Balkam*, 40 Maine, 291; *A. S. R.*

*Boom Co.* v. *Sanborn*, 36 Mich. 358; *Prentiss* v. *Garland*, 67 Maine, 345.

In April, 1878, the plaintiff received from the defendant on "account of oak timber" a negotiable draft for $2000.

It is now pretty well settled in this State, that the giving of negotiable paper is *prima facie* evidence of the payment of the debt *pro tanto*, and in *Coburn* v. *Kerswell*, 35 Maine, 126, it was held to defeat a lien.

DANFORTH, J. This is an action to enforce an alleged lien upon the property attached, by virtue of the provision in R. S., c. 91, § 7, as follows: "Any person who furnishes labor or materials for building a vessel, shall have a lien on it therefor. . . . He shall also have a lien on the materials furnished before they become a part of the vessel, which may be enforced by attachment."

The contract, under which the timber sued for, was furnished, is as follows: "I agree to take two ships' frames from N. Mehan, to be delivered in April, 1877; Ship No. 1, 1450 to 1600 tons; No. 2, from 900 to 1000 tons; time to commence for payment, November 1, 1877. Mould stern, keel and stern post. Price, thirteen dollars, on the banks in reach of ship's tackles." This contract is in writing and signed by the defendant; it was accepted by the plaintiff, and no objection is made that it was not fully complied with and performed on his part.

The first and important question is, whether the contract is such as to give the plaintiff a lien on the timber furnished under it by the provision of the statute.

The timber for each vessel was distinct and separate from the other, and furnished specifically for a particular vessel. All the timber attached in this case, was furnished for one of the vessels, though it has never become a part of the vessel, for it has never been built or even commenced. The vessel was to have been built in this State, and the timber, when attached, was found in the yard, where it had been placed for use. This would seem very clearly to bring the sale within the terms of the statute, as it does within its jurisdiction. The only requirement is that the material shall be furnished for a vessel. This of course means

that such shall be the contract, and when so furnished, the law attaches the lien. It must, too, be for a vessel within the State, for, as said in the argument, the statute can have no force beyond the State line.

It is however contended that by the principles of law applicable to the construction of contracts, the one in question cannot embrace the lien claimed. Though the lien is imposed by law, it is undoubtedly true that it can do so only when the law becomes a part of, or an element in the contract; or in other words, when it appears that the contract was made with reference to the law. This was so held in *Fuller* v. *Nickerson*, 69 Maine, 236; *Rogers* v. *Currier*, 13 Gray, 129; *Tyler* v. *Currier*, *Id.* 134; and *Reed* v. *The Hull of a new Brig*, 1 Story, 250.

We must therefore ascertain from the contract itself, aided by such of the reported evidence in the case as is admissible, whether it was legally within the contemplation of the parties, that this contract should embrace the lien claimed.

It does not in terms refer to a lien. It is not necessary that it should do so. As we have already seen, it comes within the terms of the statute, and if made in reference to it, that would be sufficient. In order to ascertain whether a given contract was made with reference to any particular law, the fundamental principle is to ascertain whether the contract was made at a place within the jurisdiction of that law. This contract it is conceded, was not only made between citizens of this State, but was actually executed within its limits. It is clear, then, that it must be interpreted in accordance with the laws of this State, unless it is brought within some established exception to this rule.

It is claimed in this case that it does come within such an exception, that although it was made between citizens of and within the State, it was to be executed in another, and must therefore be interpreted by the laws of that place where it was to be performed. In the absence of other controlling circumstances, it would undoubtedly be the presumption, that the parties intended to be controlled by the law of the place where the contract was to be performed, so far as it related to that performance. But we are to keep in view the intention of the parties,

so far as it can be ascertained, by the application of legal principles to the language used, the nature and purpose of the contract, as well as the circumstances surrounding the parties when it is made. The place of performance is one of the facts which affects more or less, and sometimes indeed decisively, the proper interpretation.

In *Thompson* v. *Ketcham*, 8 Johns. 146, KENT, C. J., says : "The *lex loci* is to govern, unless the parties had in view a different place, *by the terms of the contract*." In his Commentaries, 2 vol. 459, he says : "But if a contract be made under one government, and is to be performed under another, and the parties *had in view* the laws of such other country in reference to the execution of the contract, the general rule is, that the contract, in respect to its construction and force, is to be governed by the law of the country or state in which it is to be executed."

In *Fanning* v. *Consequa*, 17 Johns. 518, the rule is laid down in these words : "The general rule is, that contracts are to be interpreted according to the laws of the country where they are made. But if by *the terms or nature* of the contract, it appears that it was to be executed in a foreign country, or that the parties *had respect to the laws* of another country, then the place of making the contract becomes immaterial, and the obligation must be tested by the laws of the country where the duty was to be performed." In *Robinson* v. *Bland*, 2 Burr. 1078, Lord MANSFIELD, says : "The law of the place can never be the rule, where the transaction is entered into with *an express view to the law of another country*, as the rule by which it is to be governed."

In *Scudder* v. *Union National Bank*, 1 Otto, 412–13, the law is thus stated : "Matters bearing upon the execution, the interpretation, and the validity of contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance."

Story in his work on the Conflict of Laws, § 272, says : "The general rule, then, is, that in the interpretation of contracts, the law and custom of the place of the contract are to govern in all cases where the language is not *directly expressive* of the actual

intention of the parties, but it is to be tacitly inferred from the nature, and objects, and occasion of the contract. . . . Especially in interpreting ambiguous contracts, ought the domicil of the parties, the place of execution, the various provisions and expressions of the instrument, and other circumstances, implying a local reference, to be taken into consideration."

The law as applicable to the case at bar, is to be found in these citations, and is well expressed by SHAW, C. J., in the opinion in *Carnegie et al.* v. *Morrison et al.* 2 Met. 398. Referring to a contract made in Massachusetts, he says : "Then the rule *prima facie*, is that the construction and legal effect of this transaction, are to be determined by the law of Massachusetts. That is the law which must be regarded in the first instance, in deciding whether the act done, constituted a contract, and if so, between whom, and to what effect, and must prevail unless the case falls within some exception to the general rule ; and the question is, whether it does."

So in this case, it is conceded that the contract was made between citizens of and within the State of Maine. It must therefore be governed by the laws of Maine, "unless it falls within some exception to the general rule ; and the question is, whether it does."

It is contended that this does come within an exception ; that the timber was to be, and actually was delivered in Virginia, and that therefore, that was the place where the contract was to be performed, and hence we must look to the laws of that State for its construction.

But the delivery was only one of the elements which make up the contract, and one in regard to which no question arises in this case. The only question involved is, whether that element which results from the statute giving the lien, is included in the contract. This must depend upon the interpretation of it, which in *Scudder* v. *Union National Bank*, is held to be by the law of the place where made. The case of *Carnegie* v. *Morrison*, *supra*, is perhaps more to the point. There the contract was made in Massachusetts, by which certain acts were to be done in England. The court held that the law of Massachusetts was to govern ;

saying on page 400: "The undertaking, it is true, was to do certain acts in England, to wit, to accept and pay the plaintiffs bills; but the obligation to do those acts was created here, by force of the law of this State, giving force and effect to the undertaking of the defendant's agent, and making it a contract binding on them."

So in *Tyler* v. *Currier*, 13 Gray, 124, relied upon by the defendant, the same result is reached at least by implication. There the contract was made as well as to be executed out of the State, and the court placed their decision upon that fact, holding that under such circumstances the plaintiff had no lien because there was no agreement to that effect, but add that "this would not be necessary, if the contract had been *made* in this commonwealth; because the law would then create the lien, and cause it to attach, as an incident to the contract,"—and by the last clause in the opinion, it would seem to have been sufficient to have caused the lien to attach, if there had been a stipulation or agreement that the timber should have been applied to the construction of the vessel.

In this case, not only was the contract made in this State, but considering the terms of the contract, and the circumstances surrounding the parties at the time, there can be no doubt that both parties intended and understood that the timber was to be applied in the construction of a particular vessel in this State.

But what is very significant if not decisive in this case, is the fact that the payment was by force of the contract, to be made in this State. True, no place of payment is alluded to in the contract. It therefore by well settled principles of law, is payable where it is made. Story Conflict of Laws, § 272, a. All the circumstances of the case show clearly that such was the intention of the parties. The lien, though an element of the contract, is made so for the purpose of securing and enforcing the payment, and in this respect it was not only made, but was to be performed in this State, and thus entitled to the benefit of the laws of this State.

Thus the nature, object and purposes of the contract, as well as the place where it was made, all lead to the conclusion that

the parties to it, had in contemplation the laws of no place except those of their own State, and that they did contract in reference to such laws. Even the delivery, such as it was, does not militate against this position. The contract in terms, does not provide for a delivery in a foreign jurisdiction. It fixes a price to be paid "on the banks in reach of ship's tackle," and the evidence shows that the banks contemplated by the parties were in Virginia,. and the timber was actually taken in that State. From that time, it may be assumed that the timber was in the possession,. and at the risk of the purchaser. But it by no means follows that the purchaser's duty to the vendor, under the contract had. then ceased. Such would not be a fair construction of the contract. If the parties had so intended, we should expect a delivery in terms would have been provided for. But instead of that, the price is fixed at that place and the same evidence that shows an actual delivery shows no survey until it arrives at the yard where it was to be used. Besides, from the terms of the contract showing that the timber was for a vessel, and the evidence showing that that vessel was to be built in this State,. we must come to the conclusion that when the timber was so delivered, it was in the contemplation of both parties that it was to be brought into this State, and here used. It is possible that after the delivery, the purchaser might have given a good title to a subsequent vendor for a good consideration and without notice,. but it can hardly be doubted that such a sale before it came to Maine and was properly surveyed, would be a breach of good faith, if not of the contract. Certainly such a delivery, if not proof that the parties were acting under the laws of Maine, can: be no evidence whatever that they were acting in reference to other laws, so as to make this contract an exception to the general rule, requiring its construction in accordance with the laws of the place where made.

It is however, claimed that the credit given was a waiver of any lien which otherwise might have existed.

But the statute makes no such exception. In its terms it covers sales on credit, as well as those where no credit is given. The lien is to secure the debt due for the timber and it is no less.

a debt where credit is given, than where it is not. Nor is the credit inconsistent with a lien upon property in the timber, or with the rights of other parties. It is precisely the same in effect in the one case as the other, and either way is in accordance with the ordinary mode of dealing where a vendor takes security for his debt.

It is undoubtedly true that a party having a lien or who might have one, may waive it by express terms, or by implication. Here it is not done by express terms, nor by any act inconsistent with his claim to it. It is true that a person may give so extended a credit, that it might probably go beyond the time for enforcing it. In such case, it might be evidence tending to show a waiver, but it could be no more. Such however is not this case. Here the credit would in all probability expire before the lien is lost by lapse of time.

It is also true that a party having a lien, may lose it by giving a credit, so long that the time for enforcing it shall expire before the credit does. The only means of enforcing a lien, is by an attachment, which must be made within a limited time, and in an action for the recovery of the debt. If the debt does not become payable within the time allowed to enforce the lien, the action cannot be maintained, and the attachment must necessarily fail. Such was the case of *Scudder* v. *Balkam*, 40 Maine, 291, relied upon by the defendant. That case was decided, not upon the ground that credit had been given, but because the debt was not payable, and the action could not be maintained for the purpose of enforcing the lien where it could not be for the recovery of the debt. But such is not this case. Here is a debt payable and the time for enforcing the lien has not elapsed. In the case of *Prentiss* v. *Garland*, 67 Maine, 345, there was an extension of the time of payment, a credit given, but the lien was not discharged. True, there was an agreement that it should not be, but if the credit is inconsistent with a statute lien, an agreement that it should not be discharged could not save it. These cases and others show that a waiver or a discharge of a statute lien, rests upon contract until it becomes discharged by lapse of time. A credit within the limitation of law, can therefore

affect it only as it may be used as evidence of a discharge or waiver.

Another question raised is that of the effect of a draft of $2000, sent by defendant to plaintiff. On the part of defendant, it is claimed that it was a payment *pro tanto* and lessens the lien claim to that extent.

It may now be considered as well settled law in this State, that negotiable paper given for a simple contract debt, is *prima facie* to be deemed a payment or satisfaction of such debt. "This presumption may be rebutted and controlled by evidence that such was not the intention of the parties." "The acceptance of negotiable paper for a debt, and giving a receipt in discharge thereof, are an extinguishment of the original liability, unless the parties did not so intend." *Crosby* v. *Redman*, 70 Maine, 56. Such seems to be the law of this State, sustained by a series of decisions. *Milliken* v. *Whitehouse*, 49 Maine, 527; *Wilkins* v. *Reed*, 6 *Id*. 220; *Coburn* v. *Kerswell*, 35 *Id*. 126; *Perrin* v. *Keene*, 19 *Id*. 355; *Paine* v. *Dwinel*, 53 *Id*. 52; *Ward* v. *Bourne*, 56 Maine, 161.

In the most of the cases where this principle has been applied, the original claim was not secured, and to such, upon well established principles of law, it would seem to be correct. In its application to lien claims, it would seem to be more doubtful, for although the simple contract debt becomes merged in the higher security and discharged, there is still an outstanding debt, which is really unpaid. Hence in many of the States, it is not in such cases, deemed to be a discharge of the lien, but leaving that in full force; on the same ground that a mortgage is not discharged merely by a change in the form of the indebtedness secured by it. But perhaps it is too late to overrule the decisions in our State, and in this case we find no occasion for it. If in the case of a lien the presumption is not overcome, it is certainly very much weakened. In Massachusetts, whose decisions in such cases we have followed, it was said in *Curtis* v. *Hubbard*, 9 Met. 328 : "The rule adopted in Massachusetts that a negotiable promissory note, given for a simple contract debt, shall be deemed a payment, is to be taken with considerable qualification. . . . This is a presumption of fact, which may be rebutted by evidence show--

ing that it was not so intended; and the fact that such a presumption *would deprive the party who takes the note of a substantial benefit, has a strong tendency to show that it was not so intended.*"

In *Butts* v. *Dean*, 2 Met. 76, where a bond was given, conditioned to secure a balance of account, and a promissory note was taken, and a receipt given for the balance of account, it was held not to be a discharge. *Thurston* v. *Blanchard*, 22 Pick. 18.

In *Kidder* v. *Knox*, 48 Maine, 555, we find the following quotation as sound law: "Whenever it appears that the creditor had other and better security than such note for the payment of his debt, it will not be presumed that he intended to abandon such security and rely upon his note."

From the cases cited, it is evident that if the note is taken as collateral, or for any purpose other than as a substitution for the original debt, the presumption of payment or discharge does not attach. If it was so taken when the debt is secured, the presumption is very much weakened if not destroyed. *Parkhurst* v. *Cummings*, 56 Maine, 155.

In this case the evidence is hardly satisfactory that the draft was taken for any part of the debt. It was not asked for as such, or even at all. The demand was for money. The draft was sent instead with the remark: "I trust you can get it discounted." The attempt to get it discounted did not succeed, and it never was used. We find nothing tending to show very strongly that the defendant intended it as a substitution for the debt, or that the plaintiff received it as such. Besides, no receipt was given and nothing whatever to show any application of this or the two subsequent drafts given in exchange. All the drafts have been given up, and the only conclusion to which we can come, is that the original debt is in full force.

The amount claimed in the writ without interest, is $4550. This amount appears to be sustained by the evidence. The provision in the contract as to the time of payment is that it was to commence November 1, 1877. This would not seem to indicate that the whole or any particular part was to be paid at that time. Hence the only construction we can put upon the

contract in relation to this point, is that the amount was to be paid on demand after the time named. No demand is alleged in the declaration, and though money was asked for, no specific demand appears to be proved. The plaintiff is therefore entitled to recover interest from the date of the writ.

> *Judgment for the plaintiff for the sum of $4550 and interest from date of writ and against the property attached for same amount.*

APPLETON, C. J. WALTON, BARROWS, LIBBEY and SYMONDS, JJ., concurred.