**MAXAN DRESS CORP. v. UNITED STATES.**

No. 49509.

United States Court of Claims.

Oct. 6, 1953.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

Ernest C. Baynard, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

JONES, Chief Judge.

Plaintiff seeks to recover $2,325.38 which it claims represents the sum reasonably expended by it in protecting government property from damages incident to a fire in plaintiff's factory. Plaintiff took the action pursuant to the provisions of a contract between the parties.

The plaintiff is a New York corporation with its office and principal place of business in that state, and with a manufacturing plant located in Ware, Massachusetts. During the latter part of 1943 plaintiff entered into Purchase Order Contracts numbered 1353 and 4243 with defendant, in which it agreed to manufacture and furnish the Quartermaster Corps, War Department, 70,000 insect bars. Under the terms of these two contracts defendant furnished plaintiff with netting, cloth, and other materials necessary for the manufacture of such articles. Each contract contained a recapture clause which provided:

"Recapture Clause: In the event of loss or damage of any kind or description to Government-owned property, the Contractor shall give immediate notice thereof by telegram collect to the Contracting Officer. The Contractor shall protect said Government-owned property from further damage, forthwith separate the damaged and undamaged property, put it in the best possible order and furnish the Contracting Officer with a complete inventory stating separately the description and quantity of the destroyed, damaged and undamaged property.

\* \* \* \* \* \*

"Whenever appropriate on account of the happening of loss or destruction of Government-owned property or action taken under this Article, or both, an equitable adjustment will be made in the terms of this contract, and the contract will be modified in writing accordingly. Claim for adjustment under this Article may be asserted at any time prior to the date of final settlement of this contract. If the parties fail to agree on the adjustment to be made, the dispute will be determined in accordance with Article on Disputes, [see finding 4] but the Contractor shall follow the directions of the Contracting Officer notwithstanding the pendency of any such dispute."

Plaintiff's manufacturing plant was located in two old mill buildings in the town of Ware. The sewing room occupied the second floor of one building and was connected by a passageway to the cutting and storage rooms in the other. On January 4, 1944, a fire occurred in the building in which the sewing room was located, destroying all machinery, material, and manufactured goods therein. While the building in which the cutting and storage rooms were located was not destroyed by fire, windows were knocked out, a hole was made in the roof by firemen, and considerable damage resulted from smoke, water, and exposure to the elements. Defendant was promptly notified of the fire, and was advised that the extent of damage to the material was not yet known.

The following day plaintiff's employees were able to enter the cutting and storage rooms and ascertain the extent of damage. In addition to broken windows and a torn roof, the elevator between the two rooms was inoperative, the steam heat was off, and the piles of netting laid out on the cutting tables were water soaked and, in some instances, frozen.

In the storeroom on the second floor were 72 cases of completed insect bars ready for shipment and a quantity of cases containing netting and sheeting. Water had run down the stairwell and through the cracks in the floor, wetting an undetermined number of these cases.

By a letter dated January 7, 1944, the contracting officer acknowledged receipt of notice concerning the fire. This letter continued:

"It is requested that immediate steps be taken to have this material dried in order that the damage may be minimized as far as possible and that this Depot be notified of the exact quantity of Bars and of each type of material found to be unusuable as a result of the damage."

Plaintiff advised the contracting officer by letter on January 8, 1944, that all steps possible to protect the government property not destroyed by the fire had been taken. Attached to this letter was an inventory of the government property remaining after the fire, which reflects a total of some 170,000 yards of cloth, netting and sheeting.[1] Inasmuch as the cartons of materials had not been opened at that time, it is impossible to determine how much of the material was actually wet. It is for reimbursement of the expense incurred in drying and repacking this material that plaintiff now sues.

The defenses are asserted that plaintiff failed to appeal to the head of the department as required by the contract, was guilty of laches, and has not proved damages. We shall deal first with the factual question of damages, since a summary of the facts is essential to the disposition of the legal questions presented.

The recapture clause quoted supra provides for an equitable adjustment for expenses incurred in protecting or preserving government property. Our inquiry is therefore directed to a determination of what, under the circumstances, was reasonably expended to protect the property and the sufficiency of plaintiff's proof in this connection.

The employees at plaintiff's factory consisted of some 100 female operators of sewing machines, one bookkeeper, men who were skilled cutting room employees, a shipper, and two foremen. After the fire the women were discharged, except the bookkeeper, and six men [2] were retained at their skilled-labor salaries [3] to perform the salvaging work. The salvaging work is said to have occupied these men from January 5 to February 19, 1944. There is no exception to the commissioner's finding that unskilled male labor with one supervisor could have accomplished this work. While there is testimony to the general effect that unskilled labor of the type required for the salvaging work was not available in Ware at that time, the record establishes that no attempt was made to locate such labor. Inasmuch as plaintiff had another contract in addition to the two involved in this case, the manager desired to reestablish operations in Ware as quickly as possible and was therefore interested in retaining skilled and supervisory employees who would be difficult to replace. In fact, three of the four men who did most of the salvaging work remained on plaintiff's payroll after the salvaging was completed, moving directly into another manufacturing establishment.

The evidence does not accurately establish the quantity of material that had to be unrolled, stretched, dried, and repacked. It is clear, however, that several thousand yards required such processing and plaintiff has shown by the weight of the evidence that the men engaged in this operation devoted their full time to it from January 5 to February 19, 1944. The restricted space available, the condition of the building, lack of heat, and severe weather conditions no doubt accentuated the difficulties of an inherently tedious task.

Following the shipment of the salvaged material to defendant on February 24, plaintiff wrote to the contracting officer on February 28 regarding the possibility of subcontracting the manufacture of the insect bars, and further stated:

"* * * please accept this as our request for an equitable adjustment under the Recapture Clause in order that we be compensated for the costs

---

1. See finding 10.

2. Two of these men worked less than two weeks.

3. See finding 21.

and expenses which we have incurred in protecting the Government-owned property from further damages, separating the damaged and the undamaged property and putting it into the best possible order."

The contracting officer answered promptly, asking plaintiff to submit an itemized list of costs and expenses incurred under each purchase order, together with all substantiating evidence in the form of original papers and affidavits sworn to by parties having knowledge of the facts.

The Quartermaster Corps terminated Purchase Order Contracts Nos. 1353 and 4243 on March 20, 1944, for failure to complete delivery in conformity with the contract requirements.

By letter of April 12, 1944, the contracting officer again reminded plaintiff that unless the requested information was forwarded proper consideration could not be given to the claim. There was sporadic correspondence between the parties with reference to this claim (see findings 20, 21, and 22), but the data requested on March 7, 1944, was not actually furnished by plaintiff until December 29, 1948. The contracting officer replied that an investigation would be undertaken and a report forwarded to higher authority for consideration. No decision has been rendered by the contracting officer and the petition was filed in this court on February 20, 1950.

In the list of expenses submitted to the contracting officer and presented to this court the plaintiff included its entire payroll for the period involved, including the Ware plant manager and bookkeeper, neither of whom was directly engaged in the salvaging, as well as certain miscellaneous expenses for telephone, items listed as "transportation and room rent," $1.74 for incidental hardware used in the packing, and $53 for new cartons required in shipping the salvaged materials to the defendant. On this basis the figure of $3,468.88 was submitted as compensable expenditures. This was subsequently reduced to $2,325.38 and it is this amount that plaintiff now claims. For the reasons stated below we think this amount is excessive.

■ While we do not feel that the facts now before us warrant the preclusion of any recovery by application of the doctrine of laches, the prolonged and unexplained delay in complying with reasonable requests for information fully justifies the resolution of doubtful issues of fact against the plaintiff. Assertions difficult to prove in 1951 could have been easily clarified in 1944 and pleas of poor recollection are not impressive when emanating from the litigant responsible for the postponement of judicial determinations.

■ The record leads us to the conclusion that plaintiff has not justified an allowance in excess of the wages of the men actually engaged in the salvage work, and the cost of incidental hardware and extra cartons required for the packing and transfer of the materials preserved. In computing the allowance for cost of direct labor the rate for unskilled labor should be used except for one supervisory employee. Plaintiff's manager testified that unskilled labor was paid at a rate approximating the minimum wages allowed by law, which was 40 cents per hour.[4] The workmen were paid on the basis of a 40-hour week. Therefore, by allowing plaintiff the cost of the supervisory services of

---

4. Paragraph 3, sheet 9, of Purchase Order Contract No. 4243 provides as follows:

"Walsh Healy Act: Stipulation (b) of 'Representations and Stipulations pursuant to Public Act No. 846, Seventy-fourth Congress,' approved 30 June 1936 (49 Stat. 2036; 41 U.S.C. 35–45 [41 U.S.C.A. §§ 35–45]), with respect to wages is operative in view of the following determination relative prevailing minimum wage rate: Cotton Garment and Allied Industries—40 Cents Per Hour or $16.00 Per Week of 40 Hours, Arrived at Either Upon a Time or Piece Work Basis."

See also: 7 F.R. 4740.

Morris Helfner, foreman of cutters, set out in finding 21 should be modified plaintiff's schedule of allowable wages as follows:

Compensable Wages for Period Jan. 5 to Feb. 19, 1944

| Name | Type work | Hours worked | Rate | Total |
|------|-----------|--------------|------|-------|
| Morris Helfner.... | Supervisor .. | 264 | $100.00 per week... | $760.00 |
| M. Hirshkowitz.... | Laborer ..... | 264 | .40 per hour... | 105.60 |
| A. Zivilich........ | Laborer ..... | 264 | .40 per hour... | 105.60 |
| S. Lichenstein..... | Laborer ..... | 264 | .40 per hour... | 105.60 |
| B. Weisman....... | Laborer ..... | 24 | .40 per hour... | 9.60 |
| W. Smulison...... | Laborer ..... | 44 | .40 per hour... | 17.60 |
| | | | | 1,104.00 |

The wages paid to the bookkeeper, Phyllis McCarthy, and to plaintiff's manager, S. Sperling, are excluded because the record fails to establish that such expenses were incurred as a result of action taken in preserving government property. On the contrary, the indications are that these expenditures would have continued as an incident to the reestablishment of plaintiff's factory. The miscellaneous expenses listed in finding 21, with the exception of $53 for cartons and $1.74 for hardware, are not convincingly shown to have been necessarily connected with the salvage operation and are likewise excluded.

To recapitulate our conclusions on the issue of expenses allowable in an equitable adjustment as contemplated by the contract: we find that plaintiff has proved only that the labor indicated above was necessary and employed in the salvaging process; it has not established that the high wages paid the workmen were necessary for or entirely related to the preservation of the property; the miscellaneous expenses of $53 for the new cartons and $1.74 for incidental hardware were a necessary cost and are compensable. Plaintiff's total compensable expenditures for the protection and preservation of the property are $1,158.-74.

We turn now to defendant's contentions that plaintiff is not entitled to recover because of its failure to appeal to the head of the department, and its laches in delaying the disposition of the claim. We do not think these defenses are sufficient in this instance.

■ The necessity of appealing a *decision* of the contracting officer within the scope of the disputes article of the contract as a prerequisite to suit in this court is beyond question. United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039. Equally clear, however, is the necessity of a finding or decision by the contracting officer before a failure to appeal is a bar to the maintenance of a suit here. Manufacturers' Casualty Insurance Co. v. United States, 63 F. Supp. 759, 105 Ct.Cl. 342; Cape Ann Granite Co. v. United States, 100 Ct.Cl. 53; James McHugh Sons, Inc., v. United States, 99 Ct.Cl. 414. It is not contended that the contracting officer rendered a decision in the instant case, and the Blair and Wunderlich (U. S. v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L. Ed. 113) cases cited by defendant are therefore manifestly inapposite. Failure to appeal under these circumstances is not a bar to this action.

■■ As indicated above, the plaintiff's unexplained delay in prosecuting this claim does not in any way lessen its burden of proof or warrant the acceptance of vague assertions as evidence, but we cannot say that the doctrine of laches

is properly applicable to bar all recovery. The import of laches is much broader than the mere passage of time and delay as such. Implicit in the concept is the idea of prejudice to the opposing party by the surprising assertions of duties owed or rights violated at a time when the elements of proof are obscured by the passage of months or years, or subsequent to some prejudicial change of position by the party sued. It is the absence of this element of prejudice to the defendant which renders the invocation of this equitable doctrine inappropriate here. The defendant had notice as early as March 7, 1944, that this claim was being asserted. The postponement of the litigation no doubt made some evidence more difficult to obtain, but we cannot say that the defendant was so inconvenienced as to justify the disallowance of compensation for services requested by and rendered to the Government.

We conclude that plaintiff is entitled to recover the sum of $1,158.74 and judgment for that amount will be entered in its favor.

It is so ordered.

MADDEN, WHITAKER and LITTLETON, Judges, concur.