J. F. HODGKINS COMPANY (1), Kingman Marine Construction, Inc. (2), and Palmer & Parker Co. (3)

v.

The UNITED STATES.

No. 297-61.

United States Court of Claims.

June 7, 1963.

As Amended June 21, 1963.

Burton R. Thorman, Washington, D. C., for plaintiffs. Solomon Dimond, Washington, D. C., was on the brief.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before JONES, Chief Judge, REED, Justice (Ret.), sitting by designation, and LARAMORE, DURFEE, and DAVIS, Judges.

JONES, Chief Judge.

This is an action for "just compensation" under the fifth amendment to the United States Constitution. It is brought before us by three subcontractors of the Rice Shipbuilding Corporation of East Boothbay, Maine, to recover the value of certain statutory liens which the plaintiffs claim were acquired under Maine law and subsequently rendered worthless by the actions of defendant.

On March 26, 1954, the Department of the Navy awarded contract number NObs–3572 to the Rice Shipbuilding Corporation for the construction of 11 40-foot personnel boats, Mark II, to be man-ufactured at Rice's yard in Maine. Pursuant to that agreement Rice placed orders for needed materials and supplies with plaintiffs J. F. Hodgkins Company of Gardiner, Maine, Kingman Marine Construction, Inc. of Charlestown, Massachusetts, and Palmer & Parker Company of Cataumet, Massachusetts. The purchase orders issued by Rice to cover these transactions clearly indicated that the items ordered therein were to be used for the execution of contract NObs–3572. All the supplies and materials so ordered were shipped from plaintiffs' various places of business to Rice's yard in Maine during calendar year 1954.

Rice proved inadequate to the task of carrying out the Navy's contract, however, and the defendant terminated it on August 2, 1955, for default. At the request of the contracting officer, and pursuant to the provisions of the contract itself, Rice executed an "Instrument of Transfer of Title" on August 4, 1955, by which it transferred to the defendant title to all materials, supplies, and hulls which it then had in its possession. Subsequent to this transfer Rice was adjudged a bankrupt leaving the plaintiffs herein in the position of unpaid creditors. By stipulation the parties agree that at this time the plaintiffs' unpaid claims against Rice were as follows:

| | |
|---|---|
| J. F. Hodgkins Company | $ 873.96 |
| Kingman Marine Construction, Inc. | 2,746.07 |
| Palmer & Parker Company | 4,224.87 |

With regard to persons who supply materials for the construction of vessels, the Maine statutory law contains the following provision:

"Whoever furnishes labor or materials for building a vessel has a lien on it therefor, which may be enforced by attachment thereof within 4 days after it is launched; * * *. He also has a lien on the materials furnished before they become part of the vessel, which may be enforced by attachment; * * *." [Maine Rev.Stat.1954, C. 178, § 13.]

It is the contention of the plaintiffs in this case that when the defendant took

possession of the items listed in the instrument of transfer on August 4, and destroyed their identity by removing them from the State of Maine, it became obligated under the fifth amendment to pay each of them "just compensation" for the corresponding destruction of the value of the liens they had acquired. Plaintiff Kingman limits its claim in this case to the sum of $540.00 as representing that portion of the total debt of $2,-746.07 which is directly attributable to those supplies delivered prior to August 4.

At the outset, it is apparent that the issue of "taking without just compensation" is identical with that decided in the case of Armstrong v. United States, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). Unless the defendant is able to distinguish the instant case, or unless there is some procedural bar to its decision, plaintiffs must prevail. The Armstrong case dealt with the liens of 27 other materialmen and suppliers who had also furnished Rice Shipbuilding Corporation with materials for use in connection with contract number NObs–3572. In that case plaintiffs sought, and received, compensation for the deprivation of the enjoyment of their liens to which they were entitled by the same provision of Maine law upon which the plaintiffs before us rely.

■ In ruling upon the salient point, the Supreme Court held that the right to resort to specific property for the satisfaction of such lien claims is a compensable right by virtue of the fifth amendment. Because of the sovereign immunity of the United States, any lien owned prior to the execution of the transfer of title became unenforceable immediately thereafter, resulting in the constructive destruction of such lien although it remained technically valid and had compensable value. Armstrong v. United States, supra, at 46.

Ordinarily it would seem that in view of the fact that substantially all the issues in this case are the same as those decided by the Supreme Court in Armstrong adversely to the defendant, further litigation and consideration by this court would be unnecessary. However, the defendant has raised and briefed certain matters which we think it proper to discuss.

■ The first point raised is that two of the plaintiffs, Kingman, and Palmer & Parker, had no valid liens by reason of the fact that their places of business were outside the State of Maine. It is defendant's position on this issue that a lien is an incident of contract,[1] the implication being that since the contract in this case was made in the State of Massachussets the lien law of that state, if any, should have been applied. In other words, defendant would have us rule that the statutory lien of Maine does not inure to the Massachusetts plaintiffs. The short answer to this contention is that the property was delivered by the plaintiffs to Rice for use *within the State of Maine*. The plaintiffs paid the freight and assumed responsibility until the actual delivery to the shipbuilding company in Maine.

Defendant places considerable reliance upon the law found in Mehan v. Thompson, 71 Me. 492 (1880), attributing to that case the rule that the application of a lien is to be decided by the law of the place where the contract is made. In that interpretation defendant's reliance is misplaced, for the case put in its proper perspective more fully supports the rule that it is the intention of the parties derived from the surrounding circumstances that will determine whether the contract was made with respect to Maine law. In Mehan, the plaintiff purchased timber under a contract entered into in Maine for delivery in Virginia. It was clear from the contract, however, that the

---

1. This theory is suggested by a very early Maine case:

   " * * * this lien is a matter of, or at least incident to, a contract. True, it is established by law, but it is affixed to, and cannot exist without a contract." [Fuller v. Nickerson, 69 Me. 228, 236 (1879).]

parties contemplated the subsequent shipment of that timber to Maine for the construction of certain vessels. Although the vessels were never built, the timber was in fact shipped to Maine where the plaintiff sought to exercise the statutory lien. The court, holding for the plaintiff, decided that the facts showed a contemplation by the parties that their contract would embrace Maine law.

Though in result the Mehan case applied the law of the place where the contract was made, that was not the rule of the case. We think this was clearly indicated by the court when it said:

"In the absence of other controlling circumstances, it would undoubtedly be the presumption, that the parties intended to be controlled by the law of the place where the contract was to be performed, so far as it related to that performance. But we are to keep in view the intention of the parties, so far as it can be ascertained, by the application of legal principles to the language used, the nature and purpose of the contract, as well as the circumstances surrounding the parties when it is made." [Mehan v. Thompson, supra, 71 Me. at 495–496.]

In applying that principle the court found that in

" * * * the circumstances surrounding the parties at the time, there can be no doubt that both parties intended and understood that the timber was to be applied in the construction of a particular vessel in

this State." [Mehan v. Thompson, supra, 71 Me. at 498.]

The Maine court concluded that the delivery of the timber, though consummated in Virginia, was with the intention that it be brought to Maine. In the instant case it is equally clear that the parties anticipated delivery and use within the State of Maine, and thereby contracted to embrace the law of that state. This view is consistent with the view that the Maine lien law was intended by the legislature of that state to benefit the materialman. As a matter of fact, the highest court of Maine has referred to the law as "antagonistic" to the interest of owners. Fuller v. Nickerson, 69 Me. 228, 241 (1879). The position we take is likewise consistent with leading commentators [2] and the current revision of the Restatement.[3]

It is of note that of the 27 plaintiffs in the Armstrong case, only 6 had their headquarters in Maine, while the remaining 21 had their principal place of business in one of 8 other states. That the issue of out-of-state lien holders was not raised in Armstrong leads one to wonder whether the defendant, in insisting upon the issue for the first time at this late date, is not subjecting itself to the same issue of laches which it undertakes to impute to plaintiffs.

Thus, we arrive at the second line of defense. Defendant urges that it would be inequitable to permit plaintiffs to maintain their suit at this late date, when, had they sought to enforce the original liens by foreclosure against

2. Professor Stumberg stated it thusly:
"It is believed that there is little to be gained by attempting to solve problems of title to movables through considerations of theoretical power. But the state of the situs of the chattel at the time can finally determine who is the owner, as it is the state which alone can effectively say who is entitled to the thing. If A and B claim a chattel located in State X, the ability of A or B to make his claim good by gaining possession obviously lies within State X." [Stumberg, Conflict of Laws 401 (2d ed. 1951).]

3. The Restatement, Tentative Draft No. 5, April 24, 1959, has this to say regarding liens:
"§ 279. Validity and Extent of Pledge or Lien.
"Comment: b.
" * * * Whether the doing of work or the using of materials upon a chattel creates a mechanic's or material man's lien depends upon the law of the state where the chattel was at the time."

Rice, their right of action would have expired long ago. That this defense is inadequate is obvious. In so far as it suggests the running of the statute of limitations, any objection based on the efficacy of the original liens must fall of its own weight. The case before us is founded upon the constitutional issue of taking of property on August 4, 1955, and not upon any state-created statutory right of foreclosure. That the lapse of a limitations period as to one cause of action cannot affect the enforcement of another is too well settled to merit further discussion. It is equally well settled that if the defendant wishes to rely on the delay as creating the bar of laches, it must show in what manner it was prejudiced thereby. Maxan Dress Corp. v. United States, 115 F.Supp. 439, 126 Ct.Cl. 434 (1953); Levy v. United States, 118 Ct. Cl. 106 (1950). Had plaintiffs herein acted as quickly as did those in Armstrong, their constitutional rights would not have been settled before the decision in that case on March 1, 1961. Since plaintiffs filed their petition within 5 months of that date, it is difficult to see how defendant has been prejudiced by the delay.

■ Defendant suggests, however, that it has been prejudiced at least to the extent of interest payments in the interim period. A quick perusal of the instances in which the doctrine of laches has been applied will show why we think that this is not correct. One common form of the action is found in cases where the Government, in reliance upon plaintiff's inactivity, has hired another in the position from which the plaintiff was discharged.[4] The inequity that arises in such cases is the fact that if the plaintiff recovers back pay for an unreasonable period of time the Government is paying two people to do one person's work. There are other cases in which the doctrine has been invoked to prevent the real danger of the facts becoming obscure or uncertain due to the witnesses becoming unavailable, memories failing, or documents becoming lost or misplaced.[5] But no such factors exist here. The Government took plaintiffs' property and has kept it since. Had plaintiffs' valid claims been paid at the time of the taking they would have had the use of that money during the intervening period. Instead, it was the defendant who had the benefit of that use. For this reason, we do not believe defendant has shown that it would be prejudiced or in any way injured by being called upon to pay a reasonable rate of interest at this time.

For the foregoing reasons, plaintiffs' motion for summary judgment is granted and defendant's motion is denied. Plaintiffs are therefore entitled to recover and judgment is entered for them in the following amounts:

(1) J. F. Hodgkins Company ................. $  873.96
(2) Kingman Marine Construction, Inc .....    540.00
(3) Palmer & Parker Co. ....................  4,224.87

together with interest on these respective amounts from August 4, 1955, at the rate of 4 percent per annum as a part of just compensation to date of payment.

4. See, e. g., United States ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919); Bailey v. United States, 171 F.Supp. 281, 144 Ct.Cl. 720 (1959); Henry v. United States, 153 F. Supp. 285, 139 Ct.Cl. 302, (1957); Dion v. United States, 137 Ct.Cl. 166 (1956).

5. In a typical case, this court said: "Implicit in the concept [laches] is the idea of prejudice to the opposing party by the surprising assertions of duties owed or rights violated at a time when the elements of proof are obscured by the passage of months or years, or subsequent to some prejudicial change of position by the party sued." [Maxan Dress Corp. v. United States, 115 F. Supp. 439, 444, 126 Ct.Cl. 434, 442, 444 (1953).]