**B. Allan SUMNER, et al.**

v.

**The UNITED STATES.**

No. 539–79C.

United States Court of Claims.

May 5, 1982.

Irwin M. Friedman, Beverly Hills, Cal., attorney of record, for plaintiff.

Gerald L. Elston, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant. Jerry L. Bassett, Dept. of Health and Human Services, San Francisco, Cal., of counsel.

\* Before he died, Judge Kunzig participated in the oral argument and agreed with the disposition of this case.

1. The provisions of the Act in effect during the years involved in this case are found at 42 U.S.C. § 1395 *et seq.* (1964 & Supp. III 1965–67). The substance of their relevant portions is virtually the same as the current provisions. Further citations will be to the earlier version.

Before FRIEDMAN, Chief Judge, and KUNZIG * and BENNETT, Judges.

**PER CURIAM:**

This Medicare case comes before the court on the parties' cross-motions for summary judgment. The two plaintiffs are the former shareholders and directors of Parkview Hospital, Inc., a now dissolved corporation that qualified for the years 1966–68 as a Medicare provider under Part A of the Medicare program, 42 U.S.C. § 1395 *et seq.* (1976 & Supp. III 1979) (the Act).[1] Plaintiffs seek to recover $90,471, which the designated fiscal intermediary,[2] the Blue Cross Association of Southern California (Blue Cross), assessed against them as sole surviving shareholders of Parkview after a 1972 audit of the hospital's cost reports.

The plaintiffs allege that the decision making the assessment was arbitrary, capricious, and violated applicable statutes and regulations, and that, in any event, laches barred the Blue Cross 1972 audit upon which the assessment was based. We uphold the assessment and grant the defendant's motion for summary judgment.

## I.

Parkview Hospital ("Parkview") was a 47-bed, short-term, proprietary hospital which plaintiffs owned and administered. It was a Medicare provider facility from July 1966 through July 1968, when its assets were sold. In accordance with then-existing Medicare regulations, Parkview filed its cost reports for the fiscal years ending June 30, 1967 and July 31, 1968, with Blue Cross on October 16, 1967 and June 12, 1968, respectively. It was reimbursed on the basis of these reports.

2. A fiscal intermediary is a public agency or private organization that contracts with the Secretary of Health, Education and Welfare (now Secretary of Health and Human Services) to determine the amount of reimbursement owed to the provider of hospital services and to make payments. 42 U.S.C. § 1395h(a).

On May 4, 1972, Blue Cross notified plaintiffs that the cost reports would be audited. Plaintiffs assert that at that time they first discovered that the successor hospital had destroyed all records for the years, in contravention of an alleged pre-sale agreement requiring the purchaser to maintain the records for six years.

On the basis of its audit, Blue Cross concluded that plaintiffs owed the government $90,471. It found, first, that the compensation Parkway had paid to the owners was "grossly excessive," in view of the nature of their services to the hospital. Second, Blue Cross determined that the plaintiffs improperly had allocated part of the gain on Parkview's sale to "goodwill," to avoid recapture of past depreciation deductions. Blue Cross' Chief Hearing Officer later reduced plaintiffs' assessment to $77,129.

Plaintiffs appealed the Blue Cross decision to the Blue Cross Providers Appeals Committee ("Appeals Committee"), which sustained the action but increased liability to the previous $90,471 figure.[3] The Appeals Committee held that plaintiffs had failed to support their claims with satisfactory evidence, such as records or other data, as required by law, and that the Blue Cross determinations had a reasonable basis.

Plaintiffs, who were responsible for the liabilities of the then-defunct Parkview, paid the assessment to the United States. They then timely filed an action in the United States District Court for the Central District of California to recover the assessment, which that court transferred to this court.

## II.

Under Part A of the Medicare Act, providers receive reimbursement payments based on the reasonable costs of their services. 42 U.S.C. § 1395f(b). The Secretary of Health, Education and Welfare (now Health and Human Services) has promulgated a number of regulations[4] for determining the "reasonable costs" of services. Particularly significant here are regulations requiring providers to substantiate their reimbursement claims with adequate evidence. 20 C.F.R. § 405.406(a) requires the provider to "maintain sufficient financial records and statistical data for proper determination of costs payable under the program." 20 C.F.R. § 405.453(a) requires that "[p]roviders receiving payment on the basis of reimbursable cost must provide adequate cost data. This must be based on their financial and statistical records which must be capable of verification by qualified auditors."

Plaintiffs claim that all Parkview records for the period involved in this case were lost or destroyed by the successor hospital. When Blue Cross audited Parkview's cost reports it therefore was required to use other bases for determining the reasonableness of plaintiffs' claimed costs. Although plaintiffs rely on these other bases to support their claims, the lack of documentary evidence based upon Parkview's own records necessarily makes it more difficult for plaintiffs to prove their case.

■ In considering plaintiffs' claims, the limited scope of our review in Medicare cases must be respected. We determine ordinarily only whether the administrative proceedings have complied with the Constitution and the applicable statutes. *West Seattle General Hospital v. United States*, Ct.Cl., 674 F.2d 899, 900 (1982); *Goldstein v. United States*, 201 Ct.Cl. 888, 889–90, *cert. denied*, 414 U.S. 974, 94 S.Ct. 287, 38 L.Ed.2d 217 (1973); *see also, St. Elizabeth Hospital v. United States*, 214 Ct.Cl. 322, 327, 558 F.2d 8, 11–12 (1977); *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 57–58,

---

**3.** Defendant explained at oral argument that the increase reflected a correction in application of certain procedures for determining liability. Plaintiffs do not dispute the increase.

**4.** During the period involved in this case, 1966–68, the regulations were contained in 20 C.F.R. The regulations were transferred to 42 C.F.R. under generally the same numbering to reflect the change in administrative responsibility for Medicare from the Social Security Administration to the Health Care Financing Administration in 1977. References in this opinion are to the 1967 edition of the regulations.

536 F.2d 347, 350–51 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977).

Under this standard of review, we have no basis for overturning Blue Cross' determinations in this case.

### III.

Plaintiffs assert that, because Blue Cross failed to initiate an audit of Parkview's cost reports until 1972, four years after Parkview submitted the first cost report, laches bars recovery of any reimbursement for amounts paid pursuant to the reports. Plaintiffs urge us to apply retroactively regulations effective three years after Parkview filed its first cost report that require fiscal intermediaries to initiate field audits of providers within three years of the filing of cost reports.

Assuming arguendo (1) that laches applies to the initiation of administrative as distinguished from judicial proceedings, (2) that the doctrine properly could be applied against the government in the present situation, and (3) that Blue Cross would be treated as the government—all highly dubious assumptions—we still would not invoke laches here to bar the Blue Cross audit.

Laches is an equitable doctrine that generally is invoked only in actions in equity, not in actions at law. *See, e.g., Armstrong v. Maple Leaf Apartments, Ltd.,* 622 F.2d 466, 474 (10th Cir. 1979); *Sun Oil Company v. Fleming,* 469 F.2d 211, 213–14 (10th Cir. 1972); *Sandobal v. Armour and Company,* 429 F.2d 249, 257 (8th Cir. 1970); *M. Lowenstein & Sons, Inc. v. Austin,* 430 F.Supp. 844, 846 (S.D.N.Y.1977); *see also* 30A C.J.S. *Equity* § 113 (1965). In suits at law the only time bar is the statute of limitations. This court has recognized a limited exception to this general principle, and because of the special circumstances civilian and military pay involve, has applied laches in those cases to bar certain suits filed within the statute of limitations period. *See, e.g., Brundage v. United States,* 205 Ct.Cl. 502, 504 F.2d 1382 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Henry v. United States,*

139 Ct.Cl. 362, 153 F.Supp. 285 (1957) (citing *Nicholas v. United States,* 257 U.S. 71, 42 S.Ct. 7, 66 L.Ed. 133 (1921); *Norris v. United States,* 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921); and *United States ex rel. Arant v. Lane,* 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed.2d 650 (1919)).

The court, however, has declined to apply laches in other areas such as government contracts. *Fraass Surgical Manufacturing Company v. United States,* 205 Ct.Cl. 585, 505 F.2d 707 (1974); *Kaiser Aluminum & Chemical Company v. United States,* 181 Ct.Cl. 902, 388 F.2d 317 (1967); *see also, J. F. Hodgkins Company v. United States,* 162 Ct.Cl. 40, 45–46, 318 F.2d 932, 936 (1963) (laches not applied in eminent domain situation). We have not heretofore applied laches to Medicare cases, and we see no reason to do so.

### IV.

A. Parkview included as reimbursable costs the compensation it paid to plaintiffs of $75,225 and $91,746 for the two years at issue. The two plaintiffs served as director of the hospital's laboratory and its assistant administrator, and as the administrator, respectively. Blue Cross determined that reasonable compensation for those years was $31,279 and $36,000, respectively. Blue Cross based that determination on salary guidelines of the Bureau of Health Insurance, a method sanctioned in 20 C.F.R. 405.426 and Chapter Nine of the Provider Reimbursement Manual. This court has approved the use of similar guidelines. *Lincoln Park Nursing Home, et al. v. United States,* 220 Ct.Cl. 626, 632–33, *cert. denied,* 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979). In attempting to justify compensation in excess of these guidelines, plaintiffs submitted affidavits and lists of their duties at the hospital, but provided no supporting documentation.

Blue Cross found that the services the plaintiffs performed were comparable to, but not in excess of, those usually performed in the administration of a small hospital such as Parkview. Blue Cross not-

ed that, although Parkview had 47 beds, its average daily occupancy was only 23 beds. Blue Cross pointed out that the owners received compensation that exceeded "the established range" of administrators' salaries for hospitals five times the size of Parkview. Blue Cross concluded that Parkview "failed to establish special circumstances to justify compensation to the two owners in excess of the guidelines."

Plaintiffs have not shown that Blue Cross violated any specific procedural or substantive requirements. Under our limited review authority in Medicare matters, we have no basis for rejecting Blue Cross' determination.

Plaintiffs contend, however, that Blue Cross was estopped from reducing their compensation. They point out that, for three years before Parkview entered the Medicare program, Blue Cross had reimbursed Parkview for services the hospital provided for Blue Cross members at a level that reflected plaintiffs' compensation, which remained the same from 1963 until they sold the hospital in 1968.

■■■ The fact that Blue Cross did not question the plaintiffs' compensation during the time that Blue Cross made payments to Parkview under Blue Cross' medical insurance contracts does not bar Blue Cross from challenging those payments when acting in the wholly different capacity of a fiscal intermediary of the United States. Moreover, the doctrine of estoppel is inapplicable to this situation. Estoppel requires an affirmative representation by the party estopped on which the injured party has relied to his detriment. *Dee Hong Lue v. United States*, 150 Ct.Cl. 655, 663, 280 F.2d 849, 854 (1960). Blue Cross made no such affirmative representation to Parkview. "The Medicare regulations unambiguously reserve the effective determination of reimbursable costs to the time of final audit and expressly provide that retroactive adjustments may be made. 20 C.F.R. § 405.-454(f)." *Duke University v. United States*, 216 Ct.Cl. 412, 417 (1978) (citing *Ulman v. United States*, 214 Ct.Cl. 308, 314–17, 558 F.2d 1, 4–5 (1977).

■ B. Depreciation of assets is one of the costs for which a Medicare provider may obtain reimbursement. 20 C.F.R. §§ 405.415–.418. The Medicare regulations provide that the government may recoup any depreciation payments that are determined to be excessive in light of the gain from a subsequent sale of these assets. 20 C.F.R. § 405.415(f). The depreciation issue here involves the proper allocation of the price at which Parkview was sold between the hospital's depreciable and non-depreciable assets, for purposes of determining the recoverable gain on the depreciated assets.

The sales price of Parkview Hospital was $441,000. The plaintiffs allocated $222,666 of this amount to goodwill, which is non-depreciable. The effect was to reduce the amount of gain on the sale attributable to Parkview's depreciable property and, consequently, the amount of depreciation subject to recapture. Blue Cross held that none of the sales price was allocable to goodwill.

Plaintiffs contended before Blue Cross that under the sales agreement with the purchaser of Parkview's facilities, a major portion of the sales price was to be allocated to goodwill. They introduced evidence designed to show that such an allocation was justifiable because of the reputation of the hospital within the community and its strong financial position. Plaintiffs, however, did not produce the alleged allocation agreement. The bill of sale for the hospital did not allocate any portion of the purchase price to goodwill.

In the absence of any convincing documentary evidence establishing that the parties intended part of the purchase price to cover goodwill, Blue Cross was required to decide the question on other grounds. Blue Cross relied upon three sections of the Medicare program manual (HIM). First, it noted that although HIM–15 § 1214 requires that goodwill be "purchased" in an acquisition of the existing organization, plaintiffs had not supplied documentary evidence of such a "purchase." Second, it noted that HIM–15 § 104.14B provides that "the sales price used by the seller in com-

puting gain or loss for the final cost report must agree with the historical cost used by the new provider in computing depreciation," and that the new provider (the buyer) did not include any item of goodwill in determining its historical cost for depreciation purposes.

Finally, it referred to HIM–15 § 134.3, which allows Blue Cross to consider the provider's federal income tax returns as "secondary evidence" where "the provider does not have ... original documents constituting primary evidence of the historical cost of assets...." Blue Cross noted that the Internal Revenue Service had not required the buyer to allocate any portion of the sales price to goodwill. It concluded that because similar depreciation principles are applied for both tax and medicare purposes, and in the absence of documentation allocating part of the sales price to goodwill, it was appropriate to follow the IRS. Blue Cross therefore concluded that no goodwill had been valued or purchased or sold in the transaction. This conclusion, as the plaintiffs acknowledge, also was the view of the buyer and the buyer's appraiser.

Here, as in the case of the plaintiffs' compensation, we have no ground for rejecting the Blue Cross' conclusion that none of the sales price should be allocated to goodwill. Blue Cross' determination was consistent with the statute and the regulations.

## CONCLUSION

The plaintiffs' motion for summary judgment is denied, the defendant's motion for summary judgment is granted, and the petition is dismissed.